**INDUSTRIAL SIDERURGICA, INC., Plaintiff,**

v.

**BANCO CENTRAL, S.A., MADRID; Jose Maria Aristrain-Madrid, S.A.; and Jose Maria Aristrain, S.A., De Olaberria (Guipuzcoa), Defendants.**

Civ. No. 83-2936 (JAF).

United States District Court, D. Puerto Rico.

Dec. 19, 1986.

José Raúl Cancio Bigas, Ortiz Murias & Cancio, San Juan, P.R., for plaintiff.

Noel González Miranda, Sweeting Pons Gonzalez & Cestero, San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

This action is before us on motions by defendants for dismissal. Banco Central, S.A., Madrid (Central-Madrid) bases its motion on lack of *in personam* jurisdiction and failure to state a claim upon which relief may be granted, pursuant to Fed.R. Civ.P. 12(b)(2) and 12(b)(6). Defendants José María Aristrain-Madrid, S.A. and José María Aristrain, S.A., de Olaberria (Guipuzcoa), (collectively referred to hereinafter as "Aristrain"), also filed a motion under Rule 12(b)(6). The pertinent facts of the case are as follows:

Banco Central y Economías (Central-Puerto Rico), a Puerto Rican corporation which is a wholly-owned subsidiary of Central-Madrid, was the lender and holder of a mortgage note executed in early 1979 by plaintiff Industrial Siderúrgica, Inc. (INSID). In early 1982, INSID and its stockholders decided to sell the company. They were approached by Central-Puerto Rico's president, Mr. Antonio Campos, who indicated that Aristrain, a Spanish "Sociedad Anónima", was interested in purchasing INSID's stock or assets. According to the complaint, in March 1982, Aristrain began negotiating through Campos, in his official capacity as Central-Puerto Rico's president. INSID rejected various offers made by Aristrain as being too low. Aristrain also indicated that it would not continue its negotiations, should INSID shut down its operations. INSID decided to keep its operations open in order to keep Aristrain as a potential purchaser, even though the continued operation resulted in substantial losses.

The negotiations continued throughout 1982, reaching a point where Aristrain formed a local corporation which would be the purchaser of INSID's assets.

During the negotiations, and taking into consideration its expectations of the sale, INSID entered into a collective bargaining agreement with the union representing its employees. INSID alleges that the agreement was not favorable to the company, and that it signed the contract to please its prospective purchasers. Negotiations began to break down in December 1982 and, in January 1983, Aristrain allegedly discontinued them unilaterally. INSID's first claim for relief is that the defendants' "acts of bad faith" and "breach of the applicable laws and of the contract between the parties" caused an economic crisis for INSID and $20,000,000 worth of damages. The alternative basis for the claim alleges that the defendants' acts and conduct constitute a conspiracy to unreasonable restrain trade in violation of Puerto Rico and federal antitrust laws.

## I.

We first deal with the issue of jurisdiction over the person of Central-Madrid. Central-Madrid filed an affidavit by Mr. Juan Bule, the General Secretary of Central-Madrid, in which he attests that Central-Madrid has no offices, agents, branches in Puerto Rico, nor does it do any business here. Although he acknowledges that Central-Puerto Rico is an almost wholly-

owned subsidiary, Central-Puerto Rico operates independently; it is managed by its own board of directors and officers who do *not* also serve in similar posts with Central-Madrid. Central-Madrid's only income from Central-Puerto Rico is its stock dividends.

Plaintiff states that it does not have the information needed to verify some of the averments, and has asked for an extension of time to oppose this ground for dismissal and has requested authorization for discovery. These requests are DENIED.[1] From the face of INSID's complaint, Central-Madrid's only sin is that it is the parent company of Central-Puerto Rico. The only mentions of Central-Madrid in the complaint, besides its stock ownership, are conclusory in nature, i.e., that Central-Puerto Rico is an "agent" of Central-Madrid. All the acts which INSID claims to form the basis of its complaint involve Central-Puerto Rico and its president. It is obvious that Central-Madrid has been dragged into the fray merely because to bring the real parties in interest, Central-Puerto Rico and Campos, would destroy federal jurisdiction based on complete diversity. *See Strawbridge v. Curtiss*, 7 U.S. 267 (3 Cranch) 2 L.Ed. 435 (1806). INSID is the plaintiff in this case. It should have established these facts prior to filing its complaint, rather than trying to *bury* Central-Puerto Rico under the corporate veil. We, therefore, dismiss the case against Central-Madrid for lack of *in personam* jurisdiction. *See generally Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *Nicholas v. Buchanan*, 806 F.2d 305 (1st Cir.1986). We next turn to defendants' motion under Rule 12(b)(6).

1. Fed.R.Civ.P. 12 and 56 are intimately related. A motion to dismiss that avers facts outside the pleadings brings into play Rule 56. By its own terms, Rule 56(b) governs the parties' procedural obligations towards the court when informa-

## II.

■ A complaint should not be dismissed unless it appears that the plaintiff could prove no set of facts in support of its claim which would entitle him to relief. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). INSID, in its complaint, at paragraph 19, states that:

In addition to the commitments that appear in the "Protocolo de Acuerdo de Intención," since the commencement of the negotiations Aristrain's representatives demanded from INSID that all the operations of the company had to remain open during all the negotiations, as otherwise Aristrain would not continue with such conversations. INSID continued to operate in order to comply with this demand despite the substantial losses such operations were causing to the company.

At paragraph 25, it is also alleged that Aristrain "pressured INSID into executing a labor agreement. All that this indicates is that Aristrain was interested in purchasing INSID only if it was a functioning, vital concern; that is, that it was not interested in purchasing assets of a non-functioning entity. That INSID felt pressure to keep the business open and avoid a labor dispute over an unsigned collective bargaining agreement is understandable, in light of the fact that it did not want to lose Aristrain as a potential buyer. That this was solely a business decision on the part of INSID and not a *quid pro quo* commitment to purchase, is evidenced by the second paragraph of the Protocol of Intent Agreement:

2nd)—For the purpose of completely clearing up the accounting, financial, labor, ecologic situations, obligations and rights of the present company, etc., etc., the buying group requests from the selling group and the latter grants it, a term of 45 days, beginning on August 1st 1982, so that the buying and through an

tion is lacking in good faith. INSID has failed to comply with its Rule 56(b) burden. Furthermore, this case stands submitted on the issue now being decided since October 16, 1984. Since then INSID remains silent.

AUDITING firm ... evaluation be made and a decision reached ... to permit a better and complete knowledge of the Company, so that after having before them the results of this AUDITING, the BUYER may acquire the shares, or, on the contrary, *may desist from the transaction herein contemplated.* (Emphasis added)

It is clear that no commitment was made by Aristrain and that decisions taken by INSID though hard choices, were its choices nonetheless. We, therefore, find no claim against Aristrain for which relief may be granted.[2] Aristrain's motion to dismiss is hereby GRANTED. Judgment dismissing the complaint shall be entered accordingly.

IT IS SO ORDERED.

---

2. INSID's allegation of restraint of trade is conclusory and meritless. It acknowledges that, but for the negotiations, it would have ceased functioning and that to keep its business operating it suffered great losses. Additionally, it does not allege any acts, concerted or otherwise, among the defendants, which resulted in damage to its share of the market. Conclusory allegations that the defendants violated antitrust laws and that plaintiff was injured thereby will not survive a motion to dismiss if it is not properly supported by facts constituting a legitimate claim for relief. *Quality Foods of Centro América, S.A. v. Latin American Agribusiness Development Corp.,* 711 F.2d 989 (11th Cir. 1983).