Joseph GIARDIELLO, et al.,
Plaintiffs–Appellants,

v.

BALBOA INSURANCE COMPANY, a
California Corporation, et al.,
Defendants–Appellees

Constantinos XAROS, et al., Plaintiffs,

v.

NATIONAL AMERICAN FIRE
INSURANCE COMPANY, et
al., Defendants.

Joseph GIARDIELLO, et al.,
Plaintiffs–Appellants,

v.

BALBOA INSURANCE COMPANY, a
California Corporation, et al.,
Defendants–Appellees.

Constantinos XAROS, et al.,
Plaintiffs–Appellants,

v.

NATIONAL AMERICAN FIRE
INSURANCE COMPANY, et
al., Defendants–Appellees.

Nos. 86–5139, 86–5140.

United States Court of Appeals,
Eleventh Circuit.

Feb. 26, 1988.

Jeff B. Slagle, DeWitte Thompson, P.C., Atlanta, Ga., for Balboa Ins.

Allan M. Elster, North Miami Beach, Fla., for Giardiello.

Gerald L. Knight, Ft. Lauderdale, Fla., for Nat. American Fire Ins. Co., et al.

Michael Nachwalter, Kenny, Nachwalter & Seymour, P.A., Miami, Fla., for Thacker Const. Co.

John R. Squitero, Katz, Barron, Squitero & Faust, Miami, Fla., for James A. Cummings, Inc.

R.A. Cuevas, Jr., Asst. Co. Atty., Miami, Fla., for Dade County.

David L. Ross, Greenberg, Traurig, Askew, Hoffman, Lipoff, Rosen & Quentel, P.A., Howard W. Green, Miami, Fla., for Capital Bank.

Joseph L. Ackerman, Jr., North Palm Beach, Fla., for Walsh Const.

John Ritter, Miami, Fla., for Peoples Nat. Bank.

Leon E. Sharpe, Miami, Fla., for contractors.

Before FAY and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

CLARK, Circuit Judge:

Appellants, two locals of the Laborers International Union of North America (the "locals") and the trustees of three employee benefit funds maintained for the benefit of these locals, brought suit to obtain contributions to the funds that the immediate employer of several of the locals' members, F.H.M. Construction Company (FHM), failed to make. The locals and the trustees appeal from the district court's orders dismissing twenty-four of the twenty-seven defendants below. Cross-appellant Balboa Insurance Co. (Balboa), FHM's surety, appeals from the district court's denial of its motion to dismiss, 661 F.Supp. 644 (S.D. Fla.1985). Noting that decisions of this court handed down since the district court's orders have resolved several of the issues that were before the district court as a matter of first impression, we affirm the dismissal of sixteen of the twenty-four defendants, reverse the district court's denial of Balboa's motion to dismiss appellants' claims under the Employee Retirement Income Security Act of 1974 (ERISA), and remand the case to the district court for fuller consideration of whether the state claims against Balboa and the eight remaining defendants should proceed in federal court.

FHM, a Florida corporation in the masonry business, entered into subcontracts with five of the appellees—Fitzpatrick–Healy Transit, James A. Cummins, Inc., L.G. Defelice, Inc., Thacker Construction Co., Inc. and Walsh Construction Company of Illinois (the "general contractors")—to perform certain work in the construction of several Metrorail subway stations.[1] In ac-

---

1. On review of a dismissal for lack of subject matter jurisdiction, we accept the facts as alleged by the plaintiff unless the district court has found to the contrary. *See Eaton v. Dorchester Development, Inc.,* 692 F.2d 727, 732 n. 9 (11th Cir.1982); *Williamson v. Tucker,* 645 F.2d 404, 414 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). To the extent the district court has weighed the evidence and resolved the facts—as it is permitted to do with respect to issues of subject matter jurisdiction—we accept these facts unless they are clearly erroneous. *Id.* at 413–14.

cord with these subcontracts, FHM obtained surety bonds from Balboa guaranteeing not only FHM's performance but, with respect to most of the stations, FHM's payment for labor and materials. Record, Vol. V, Tab 213, at 3–5. These bonds included a provision limiting any causes of action to the named obligee, which was, in all instances, the general contractor for the particular station. *See id.* at Exhs. A–H. Fitzpatrick–Healy Transit, and possibly some of the other general contractors, also obtained surety bonds guaranteeing their performance. National American Fire Insurance Company, American Insurance Company, and Insurance Company of North America (the "general contractors' sureties") issued these bonds. *Id.,* Vol. VI, Tab 1, at 4.

As a minority-owned corporation, FHM received assistance from Dade County in obtaining the subcontracts. The county had, through its county commission, adopted a program to stimulate minority participation in the construction of the Metrorail System.[2] Contractors Training & Development, Inc. (CTD), a non-profit agency, assisted county-selected minority businesses in obtaining surety bonds and the financing needed to back them. *See id.,* Vol. I, Tab 1, Exh. P at 4. In FHM's case, CTD put together its bond package and arranged for Capital Bank and People's National Bank of Chicago (the "banks") to secure the surety bonds issued by Balboa. The county then guaranteed the banks' financing. *See id.,* Vol. II, Tab 37 at 25–26; *id.,* Vol. IV, Tab 105, Exh. A.

When FHM began facing financial problems and was declared in default by the general contractors, FHM, Balboa, Dade County, CTD and the banks executed an escrow agreement under which all monies paid FHM would be deposited into accounts under the joint control of FHM and Balboa. These accounts were to be used, to the extent possible, to pay off FHM's suppliers and employees and thus allow the company to complete performance of the subcontracts. *See* Record Excerpts, Tab 7 at 1, 2, 5.

FHM's employees in performing the subcontracts were members of appellant locals. Pursuant to its execution of a collective bargaining agreement covering the locals, FHM was required to contribute various amounts to the employee benefit funds represented by appellant trustees. Record, Vol. I, Exh. A. When audits to monitor these contributions revealed serious deficiencies, appellants sued FHM; Frank Mentore, FHM's chief executive officer-principal shareholder; Balboa; the general contractors; Dade County and all of the county commissioners; the county manager; the Metropolitan Dade County Transportation Administration and its executive director; CTD; and the banks. A later suit also named the general contractors' sureties as defendants. The district court consolidated the two suits.

Appellants asserted claims under ERISA, 29 U.S.C. § 1132(a)(3) (1982), against every defendant other than the general contractors[3] in an effort to recover the delinquent contributions.[4] To do so, they alleged that these defendants were each an "employer" as defined in 29 U.S.C. § 1002(5) (1982). Appellants also sued Balboa, the general contractors, and the general contractors' sureties under the Florida law governing bonds on public projects. *See* Fla.Stat.

---

**2.** The county's adoption of the bond guarantee program followed the Department of Transportation's (DOT's) promulgation of regulations requiring recipients of DOT aid to develop programs to identify minority enterprises and assist them in participating in the funded project. *See* 45 Fed.Reg. 21,184 (1980) (current version at 49 C.F.R. §§ 23.1–23.87 (1986)).

**3.** Oddly enough, in the complaint filed in the second suit, appellants included an ERISA claim against the general contractors' sureties although in the first suit they had levied only state law claims against the general contractors.

**4.** The complaint appears to have asserted additional federal claims under the Labor Management Relations Act, 29 U.S.C. § 185 (1982), against FHM, Mentore, and Balboa. Because the district court's default judgment as to FHM and Mentore and its denial of Balboas' motion to dismiss made it unnecessary to address these claims below, we also decline to address them, leaving them to the district court in the first instance.

Ann. § 255.05 (West Supp.1987). Appellants alleged that the court had jurisdiction by statute over the ERISA claims, *see* 28 U.S.C. § 1132(a)(3) (1982), and pendent jurisdiction over the state claims.

The district court entered default judgments against FHM and Mentore after they failed to appear and defend. Balboa's motion to dismiss was denied (and its appeal on the question certified) because the court was uncertain whether an employer's surety qualified as an employer under ERISA and believed there were implications in precedent that it could. The remaining federal defendants—Dade County, its officials and agencies, the banks, and the general contractors' sureties—were dismissed because they did not establish or maintain the benefit plan or have any control over FHM's operation, as the court found *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982), to require in an ERISA action. The court then "decline[d] to exercise" pendent jurisdiction over the state claims against the general contractors and their sureties. Record, Vol. V, Tab 220, Memorandum Order at 3 (S.D.Fla. Jan. 31, 1986).

I. *The ERISA Claims*

■ Balboa argues in its cross-appeal that the district court was without subject matter jurisdiction to hear the funds' and locals' ERISA claim because Balboa was not the employer of those working for FHM. The statute conferring causes of action under ERISA does limit such actions to employers, *see* 29 U.S.C. § 1145 (1982), and an employer is defined as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employee in such capacity." *Id.* § 1002(5). Balboa insists that as FHM's surety, it was not working in the interest of FHM as employer: to the contrary, it was working to protect those who might be harmed should FHM default on its obligations.

Our decision on this matter is controlled by two opinions of this court issued after the district court's decision. In both *Xaros v. U.S. Fidelity & Guaranty Co.,* 820 F.2d 1176, 1180 (11th Cir.1987), and *Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co. of Florida,* 827 F.2d 1454, 1456 (11th Cir.1987), the plaintiffs brought ERISA claims not against their immediate employers, but against the employers' subcontractors and the subcontractors' sureties. Both panels concluded that Congress did not intend ERISA coverage to extend so far. The *Xaros* court agreed with the Ninth Circuit that

> "[n]either the legislative history of ERISA, *see* 1974 U.S.Code Cong. & Ad. News 4639, nor of its 1980 amendments, *see* 1980 U.S.Code Cong. & Ad.News 2918, indicate that Congress meant to expand the concept of employer or the jurisdiction of the federal courts to include sureties, whose obligations are fixed by contract and regulated by state law for the protection of the public."

820 F.2d at 1179 (quoting *Carpenters Southern California Administrative Corp. v. D & L Camp Construction Co.,* 738 F.2d 999, 1000–01 (9th Cir.1984)).

Although this case differs factually from *Xaros* and *Laborers Local 938* in that it involves the immediate employer's surety rather than a surety of an employer's subcontractor, the emphasis of those cases dictates the same result here. The *Xaros* court focused on two aspects of the employer-surety relationship in excluding the surety from ERISA's coverage: (1) the surety was not a signatory to the collective bargaining agreement giving rise to the ERISA claim, and (2) the surety could not be said to have acted "indirectly in the interest of an employer, in relation to an employee benefit plan" when its purpose was to protect those the employer might harm. *See id.* at 1180; *see also Laborers Local 938,* 827 F.2d at 1457. Balboa was likewise not a signatory to the collective bargaining agreement mandating contribution to the funds, and the surety bond it issued was, in each instance, expressly for the protection of the general contractor, not FHM. The surety thus falls squarely under the rationale of *Xaros* and *Laborers*

*Local 938,*[5] and the ERISA claim against it should have been dismissed.

■ The issue of the validity of appellants' ERISA claims against Dade County, its officials and agencies, the banks, and the general contractors' sureties is somewhat more difficult, for there are no Fifth or Eleventh Circuit cases similar on their facts to those here. Even so, we are again bound by *Xaros* and *Laborers Local 938.* As noted earlier, *Xaros* found that a surety could not be an employer for three reasons, one of which was the fact that the surety had not signed the collective bargaining agreement calling for the contributions at issue. We might earlier have assumed that the sureties' non-signatory status was merely a *factor* in the *Xaros* court's decision, but this court in *Laborers Local 938* established that signatory status is now a *prerequisite* for being held a § 1002(5) employer: "We [in *Xaros*] rejected the argument that § 1002(5)'s phrase 'Any person acting indirectly as an employer, or indirectly in the interests of an employer, in relation to an employee benefit plan' must be read to include persons other than signatory employers who act indirectly in the interests of the employer and the plan." 827 F.2d at 1456. Because none of these defendants signed the collective bargaining agreement, the district court did not err in dismissing the ERISA claims against them.

## II. *The State Claims*

■ Appellants contend that the district court should have exercised pendent party jurisdiction over the state claims against the five general contractors and their three sureties. In summarily dismissing the claims, appellants argue, the district court failed to exercise the discretion appropriate to pendent claims under *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86

S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), and extended to pendent party claims in *Boudreaux v. Puckett,* 611 F.2d 1028, 1031 (5th Cir.1980).[6] Because we share some doubt that the district court applied a *Gibbs* analysis to the state claims, we reverse the dismissal of the state claims and remand for fuller consideration under the principles of pendent party jurisdiction.

■ Pendent party jurisdiction is a vehicle for the federal courts to hear claims against parties who would not otherwise be subject to federal jurisdiction. It arises when there is a federal claim against one party, but neither a federal claim against nor diversity jurisdiction over a second party. The court has the *power* to hear the state claim against the second party if (1) the federal claim against the first party is substantial, meaning not "inescapably" frivolous, *Jackson v. Stinchcomb,* 635 F.2d 462, 471 (5th Cir.1981), (2) the statute conferring jurisdiction over the federal claim does not "expressly or by implication negate[]" the existence of pendent jurisdiction, *Aldinger v. Howard,* 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976), and (3) the state claim arises out of a "common nucleus of operative fact," such that the plaintiff would be expected to try the federal and state claims together. *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138. Once it is determined that a federal court has the power to hear a pendent party claim, the court must employ its discretion to decide whether "considerations of judicial economy, convenience, and fairness to litigants" justify retaining the claim. *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139; *see Boudreaux,* 611 F.2d at 1031.

■ The district court here had the power to exercise pendent party jurisdiction over the general contractors, their sureties, and, for that matter, Balboa.[7] First, the

---

**5.** Additionally, the Ninth Circuit case that the *Xaros* court essentially adopted, *Carpenters Southern,* 738 F.2d at 999, involved a suit brought against the immediate employer's surety, and the *Xaros* court treated the distinction as an insignificant one.

**6.** This circuit recognizes pendent party jurisdiction and applies an analysis identical to that applied in *Gibbs* to a pendent claim, albeit not a

pendent *party. See Lykins v. Pointer,* 725 F.2d 645, 649 (11th Cir.1984); *Boudreaux,* 611 F.2d at 1031.

**7.** Apparently because its disposition of the ERISA claim against Balboa left the surety in the case, the district court did not reach the issue of federal jurisdiction over the state claim against Balboa. Because our disposition of the

parties have never asserted, nor could they assert, that appellants' ERISA claim against FHM was frivolous. Indeed, Balboa, at least, has stipulated that it does not contest FHM's liability. Record, Vol. V, Tab 213 at 6. It is clear that appellants' federal claim against FHM was substantial. Second, we have found nothing in the statute conferring jurisdiction over ERISA claims or in any judicial interpretation of it to indicate that pendent party state claims should not be heard. This is not an *Aldinger*-type situation where, by its language or as judicially construed, the statute conferring jurisdiction over the federal claim also prohibits actions against a particular type of party—as section 1983 prohibited suits against counties at the time of *Aldinger*—or involving a particular type of claim. We note that two of the three courts thus far addressing pendent party jurisdiction in the ERISA context have agreed.[8] *See Allegra v. May Welding & Construction Co.*, 627 F.Supp. 201, 203 (W.D.Pa.1985) (court had pendent party jurisdiction over state law claims against corporate officers where there was ERISA claim against corporation); *Southeastern Lumber Manufacturers Ass'n v. Walthour Agency, Inc.*, 486 F.Supp. 781, 784 (N.D.Ga.1980).

Finally, the state law claims arise out of a "nucleus of operative fact" common to the ERISA claim against FHM. Indeed, all of the facts relevant to FHM's liability would necessarily be involved in state suits against the state law defendants.[9] At the crux of the suits against both FHM and the state law defendants are the factual issues of whether money was owed to the funds, and, if so, how much. One would expect appellants to bring the claims together in order to avoid two different findings on the amount of liability.

Given that the district court had the power to hear the pendent party claims, it should have determined whether "considerations of judicial economy, convenience, and fairness to litigants" called for the state claims to remain in federal court.[10] The fact that a default judgment was entered on the federal claims did not dictate automatic dismissal. *See Brunswick v. Regent*, 463 F.2d 1205, 1207 (5th Cir.1972). Whether the state claims might now be barred by the state statute of limitations is an important concern. *Quality Foods de Centro America v. Latin American Agribusiness Development Corp.*, 711 F.2d 989, 999 (11th Cir.1983); *Pharo v. Smith*, 625 F.2d 1226, 1227 (5th Cir.1980). Even more important is the fact that federal court is the only forum in which all of these claims could be heard together, as the federal courts' jurisdiction to hear ERISA claims is exclusive. *See* 29 U.S.C. § 1132(e)(1) (1982); *Aldinger v. Howard*, 427 U.S. at 19, 96 S.Ct. at 2422. Because we cannot ascertain from the district

ERISA claim against Balboa leaves only the state claim against it, we include Balboa in our discussion here. As with the other state claims, however, we leave the ultimate determination of the pendent party issue to the district court in the first instance.

8. The third court, in *Miner v. International Typographical Union Negotiated Pension Plan*, 601 F.Supp. 1390, 1394 (D.Colo.1985), held that the preemption provision of ERISA, *see* 29 U.S.C. § 1144(A) (1982), impliedly disapproves pendent party claims. We simply cannot read the preemption that broadly. ERISA's preemption of "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" is directed to state law regulating employee benefit plans and surely does not extend to every state law claim that, however remotely, factually involves an employee benefit plan.

9. It makes no difference in determining the court's power to hear the pendent party claims that a default judgment was entered against FHM. "[T]he ultimate disposition of the federal claim is immaterial on the question of power, though it may be a relevant consideration of how the court exercises its discretion." 13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3567.1, at 114–15 (2d ed. 1984) (citing *Mendoza v. K–Mart, Inc.*, 587 F.2d 1052, 1056–67 (10th Cir.1978)).

10. This court acknowledged in *Jackson v. Stinchcomb*, 635 F.2d at 462, that "it is unusual for a court to decline to exercise that power [to hear pendent claims] where it exists." *Id.* at 472.

court's orders whether it engaged in the analysis appropriate under *Gibbs* and considered those factors,[11] and there is reason to believe that the court may have misapprehended the doctrine of pendent party jurisdiction,[12] we remand the state law claims to the district court for fuller consideration of their jurisdictional status. *See Lykins v. Pointer, Inc.*, 725 F.2d 645, 649 (11th Cir.1984) (remanding for district court to exercise its discretion where it apparently failed to consider the propriety of pendent party jurisdiction); *Quality Foods*, 711 F.2d at 999–1000.

In sum, we hold that, under *Xaros* and *Laborers Local 938*, the ERISA claim against Balboa should have been dismissed. Those cases also dictate that the dismissal of the ERISA claims against Dade County, its officials and agencies, the banks, and the general contractors' sureties was correct. We remand the case, however, for the district court to determine whether it should exercise pendent jurisdiction over the remaining state law claims.

AFFIRMED in part, REVERSED in part and REMANDED in part.

---

11. The district court stated only that it "decline[d] to exercise" pendent jurisdiction over the state law claims. Record, Vol. V, Tab 220, Memorandum Order at 3 (S.D.Fla. Jan. 31, 1986).

12. In its initial order, in discussing the claims against Balboa, the court stated: "If Balboa is not an employer, within the definition of § 1002(5), the only claim against Balboa, a California corporation, is a pendent state claim which requires diversity jurisdiction." *Giardiel-*

*lo v. Balboa Ins. Co.*, 661 F.Supp. 644, 645 (S.D. Fla.1985). Later, in discussing the claims against the general contractors, the court stated: "Absent subject matter jurisdiction under Section 502(a)(3) of ERISA, the counts against them must be dismissed for lack of diversity." *Id.* at 646. Neither of these statements was correct. Pendent jurisdiction covers situations like these where there is no independent federal question or diversity jurisdiction.