**Carlos A. QUINONEZ, Plaintiff-Appellant,**

v.

**NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., et al., Defendants-Appellees.**

**No. 74–2976.**

United States Court of Appeals, Fifth Circuit.

Oct. 15, 1976.

---

A. Don Crowder, Dallas, Tex., for plaintiff-appellant.

Fletcher L. Yarbrough, John Andrew Martin, Dallas, Tex., for Bache & Co., and others.

W. Randolph Elliott, Dallas, Tex., for Dupont, etc.

D. L. Case, Dallas, Tex., for A. G. Edwards, etc.

Jack Pew, Jr., G. Duffield Smith, Jr., Gordon H. Rowe, Jr., Dallas, Tex., for Institutional Equity Corp.

David R. McAtee, Dallas, Tex., for Natl. Assn. of Sec. Dealers.

D. Marshall Simmons, William D. Sims, Jr., Dallas, Tex., for Shearson, Hammill & Co.

Appeal from the United States District Court for the Northern District of Texas.

Before BROWN, Chief Judge, and WISDOM and COLEMAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This is another one in that long list of cases in which the shortest way through is the longest way around. Quinonez, an aspiring securities sales representative, whose competence for the business had been established by being hired by two of the Nation's giants in the security business plus a high passing grade in the industry's uniform quality examinations, claims that he was the victim of prohibited antitrust pressures when, after being successfully hired, then fired, by two large dealers, he was unable to obtain even the chance of employment by others, because of a boycott growing out of the express or tacit agreement that one member firm would not hire a person who had either been rejected or discharged by another member firm. The District Court dismissed the complaint on the ground that it failed to state a claim. F.R.Civ.P. 12(b)(6).

In more traditional terms, Quinonez alleges a violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2, by defendants, who allegedly acted in concert with one another to restrain interstate commerce unlawfully, which acts are said to have injured the plaintiff Quinonez.[1] Plaintiff sought treble damages as provided by § 4 of the Clayton Act, 15 U.S.C.A. § 15 and injunctive relief as provided by 15 U.S.C.A. § 26. Defendants moved to dismiss for failure to state a claim and the District Court granted the defendants' motion and ordered the suit dismissed. We reverse and remand.

### Through Conley Glasses And The Plimsoll Line

Central to our problem is the universal rule, so often forgotten or overlooked, announced and repeatedly restated, repeated and reiterated by the Supreme Court[2] and by ourselves that "a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts

---

1. In addition to his antitrust claims the plaintiff sought to join claims asserting violation of state law by utilizing the handy tool of pendent jurisdiction. Those claims which he sought to join to his federal antitrust claims were alleged violations of the state antitrust laws, a claim for negligence, and a claim for breach of contract.

2. The classic statement of the rule was enunciated by the Supreme Court in Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84:

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80.

which could be proved in support of his claim." *Cook & Nichol, Inc. v. The Plimsoll Club*, 5 Cir. 1971, 451 F.2d 505, 506; *see also Pred v. Board of Public Instruction of Dade County, Florida*, 5 Cir., 1969, 415 F.2d 851, 853; *Webb v. Standard Oil Co.*, 5 Cir., 1969, 414 F.2d 320; *Barber v. Motor Vessel "Blue Cat"*, 5 Cir., 1967, 372 F.2d 626; *Arthur H. Richland Co. v. Harper*, 5 Cir., 1962, 302 F.2d 324;[3] *Millet v. Godchaux Sugars*, 5 Cir., 1957, 241 F.2d 264. We stressed in *Pred* the precarious state of a judgment based on the "barebones pleadings," for at this stage the Court may well be pulled into an academic exercise on a case that factually may never be. *Pred v. Board of Public Instruction of Dade County, Florida, supra* at 852, *citing Byers v. Byers*, 5 Cir., 1958, 254 F.2d 205.

### The Complaint

Read with Conley-Blue Cat glasses the complaint reveals in a nutshell this situation. Plaintiff, after formal application, was carefully interviewed by Merrill Lynch[4] and accepted for training to become a registered representative under the New York Stock Exchange (NYSE) and National Association of Securities Dealers, Inc. (NASD) industry-wide standards. He engaged in extensive training and was accepted for employment. Because of his bilingual capacities, he was assigned to Merrill Lynch's office in the Republic of Panama. Everything went well until, after some belated concern as to his candid answers to the NYSE standard employment application about prior involvements with criminal charges, management through the Chairman of the Board decided his employment should be terminated—a characterization which plaintiff accepted rather than the more euphonious corporate statement of resigned.

Next he went to Shearson and Hammill (Shearson)—another powerful figure in the trade—where once again, after a frank statement as to his experience with Merrill Lynch, he was accepted for employment as a trainee. As before he got to the point where he was to be certified for NYSE–NASD examinations, and he was discharged.[5]

Thereafter, having committed his economic life to being a registered representative in the nation-wide securities business, he sought out employment with each of the other defendant securities companies. He was rejected by each.[6]

This was not because of any individual consideration of his own merits or qualifications but rather because of an express or tacit understanding or agreement among member firms that they would not "pirate" the others and would deny employment to applicants who had either been fired or who had been rejected for employment by any other member firm.

To these allegations, Quinonez added the detailed factual charge that in the actual operation of the securities business, the member firms (NASD, NYSE, American Stock Exchange, Chicago Board of Trade, Chicago Mercantile Exchange, and probably others) had a virtual monopoly in the trading of securities in the United States, with the inevitable involvement of interstate commerce. He further charged that this monopolization, combined with the blackball exclusionary practices of these firms,

---

**3.** "This is another case proving that final disposition of a civil action on the basis of barebones pleadings is a tortuous thing. How a standard so simply expressed, so often repeated, is apparently so often overlooked without even so much as a deferential mention of it is hard to understand. Although it seems now to be an affectation, we repeat it again, though citation of case names as a shorthand symbol of the principle ought to be enough."
302 F.2d at 325.

**4.** Merrill Lynch, Pierce, Fenner & Smith.

**5.** Shearson was considerate enough to issue the certificates, to enable him to take the examinations, which he passed with very high marks.

**6.** Although perhaps not directly relevant to a F.R.Civ.P. 12(b)(6) dismissal, the record shows that in answers to several (but perhaps not all) of the other named defendant-security dealers' interrogatories, he stated under oath that he specifically applied for employment and was rejected.

caused harm to the public by reducing the number of securities sales representatives and thus artificially reducing competition in the sale and purchase of securities in the United States, and caused harm to Quinonez in his personal business by depriving him of the opportunity to practice in the profession which he had chosen and for which he was trained and qualified.

### The Sherman Act

■ The clear purpose of the Sherman Act is to prohibit combinations which would probably interfere with the free exercise of the rights of those engaged in commerce and it is immaterial that the parties to the tainted agreement were merely trying to regulate employment. *Anderson v. Shipowners Association of Pacific Coast*, 1926, 272 U.S. 359, 47 S.Ct. 125, 71 L.Ed. 298.

■ With this salutary Congressional intent courts should liberally construe the Act to accomplish this purpose and not narrow its application by requiring aggrieved parties to plead with evidentiary specificity the acts complained of. At a minimum all that is required is a complaint alleging what we described as a per se violation—but which must comprehend a so-called prima facie case—and in a private civil action there is the additional requirement that the plaintiff allege that he was damaged by the violation.[7] We stated the rule well in *McBeath v. Inter-American Citizens For Decency Committee*, 5 Cir., 1967, 374 F.2d 359, 361:

■ For an aggrieved party to state a claim for relief under the Sherman Act it is necessary to allege only a per se violation of the Act. In a treble damage action, allegations of a per se violation plus resultant damages must be made.

While the language of Plaintiff's complaint might not meet the demands of an antitrust purist as to specific violations, the alleged violations when combined with the rather complete exegesis of the facts relating to the plaintiff's plight gave ample notice of what was complained of and thus rose above the Plimsoll line required of the liberal rules of notice pleading in federal courts. F.R.Civ.P. 8.

In *Radovich v. National Football League*, 1957, 352 U.S. 445, 453, 77 S.Ct. 390, 395, 1 L.Ed.2d 456, 462, the Supreme Court considered a similar complaint which alleged that the plaintiff had been placed on a "blacklist" because he had signed with another Football Club without obtaining the consent of his old Club. In holding this complaint sufficient to state a cause of action under the Sherman Act the Court rejected the technical objections to the complaint in stating:

Likewise, we find the technical objections to the pleading without merit. The test as to sufficiency laid down by Mr. Justice Holmes in *Hart v. B. F. Keith Vaudeville Exchange*, 262 U.S. 271, 274 [43 S.Ct. 540, 541, 67 L.Ed. 977] (1923), is whether "the claim is wholly frivolous." While the complaint might have been more precise in its allegations concerning the purpose and effect of the conspiracy, "we are not prepared to say that nothing can be extracted from this bill that falls under the act of Congress . . . ." *Id.*, at 274 [43 S.Ct. [540] at page 541.] See also *United States v. Employing Plasterers Assn.*, 347 U.S. 186 [74 S.Ct. 452, 98 L.Ed. 618] (1954).

■ We are not prepared to hold that Plaintiff's complaint fails to meet these most liberal standards. As we read the complaint it alleged a blocking of interchange among employees of the securities industry and synergetic threats of business boycott if the blacklist were not honored.

---

**7.** We are of course aware that much more is required to *prove* a private cause of action in a trial on the merits under § 4 of the Clayton Act. In addition to proving a violation and damages it is incumbent on the Plaintiff to prove a sufficiently direct causal relation between the damages he has incurred and the antitrust violation. *See, e. g., Zenith Radio Corp. v. Hazel-tine*, 1969, 395 U.S. 100, 114, 89 S.Ct. 1562, 1571, 23 L.Ed.2d 129 n. 9; *Foremost McKesson v. Instrumentation Laboratory*, 5 Cir., 1976, 527 F.2d 417. For an excellent discussion of other recently decided cases of this Circuit concerning fact of damage, *see* Reasoner and Carter, *Antitrust Developments in the Fifth Circuit*, 29 S.W.L.J. 801, 817–20 (1975).

Accordingly, we follow the lead of the Seventh Circuit in *Nichols v. Spencer International Press, Inc.,* 7 Cir., 1967, 371 F.2d 332 in holding that such no-switching agreements [8] which allegedly impair competition among the defendants and others are sufficient as a matter of law to state a claim under the Sherman Act.[9] *Cf. Union Circulation Co. v. F.T.C.,* 2 Cir., 1957, 241 F.2d 652.

### Clayton Act

Of course, in order to state a treble damage claim under § 4 of the Clayton Act the plaintiff must allege [10] that he has been "injured in his business or property" by acts of the defendant which are in violation of the antitrust laws. *See Dailey v. Quality School Plan, Inc.,* 5 Cir., 1967, 380 F.2d 484, 487; *Martin v. Phillips Petroleum Company,* 5 Cir., 1966, 365 F.2d 629. The issue then is whether plaintiff's loss of opportunity to work in the security industry is a sufficient injury to business interests to avail him of the private treble damage remedy under the Clayton Act.

Early on it was recognized that the language "business interest" in the statute should be given a broad interpretation to accomplish the Act's salutary objectives.[11] And more specifically in *Vines General Outdoor Advertising Co.,* 2 Cir., 1948, 171 F.2d 487, 491, the Second Circuit through Judge Learned Hand established that the expectancy of future business was sufficient to state a claim as a matter of law under § 4 of the Clayton Act. In this case plaintiff sets forth positively that he has been deprived of the opportunity to apply the skills he has developed, including the acceptance by two large nationally recognized firms and the passing of accepted qualification tests. *See also Dailey v. Quality School Plan, Inc., supra* at 486.

Defendants attempt to distinguish *Vines, Nichols* and *Roseland v. Phister Mfg. Co.,* 7th Cir., 1942, 125 F.2d 417 on the basis that in those cases the plaintiffs were commis-

---

**8.** Another analogous case is *Anderson v. Shipowner's Association of the Pacific Coast, supra.* In that case the Supreme Court held that an agreement between the members of a shipowner's association that none would hire a seaman unless he was a card carrying member of the association and followed their directions as to the nature and terms of the employment, was violative of the Sherman Act.

**9.** Section 6, 15 U.S.C.A. § 17 and Section 20, 29 U.S.C.A. § 52 of the Clayton Act permit the existence of labor and certain other mutual help organizations without being deemed combinations or conspiracies in restraint of trade. *See Nichols v. Spencer International Press, Inc., supra* at 335. But the defendant brokerage firms are not labor organizations and the alleged agreements were primarily designed to restrict the movement of the labor force in the industry rather than promote any legitimate labor objective. An analogous case is *Cordova v. Bache & Co.,* S.D.N.Y., 1970, 321 F.Supp. 600 which held brokerage firms guilty of conspiracy to reduce commissions paid to employees in violation of the Sherman Act. The Court refused to exempt these agreements under the provisions of Section 6 of the Clayton Act which in part states that the "labor of human beings is not a commodity or an article of commerce." The Court held that this Section was inapposite because it was primarily designed to exempt conduct of labor organiza-

tions and not commercial entities such as brokerage firms.

**10.** The allegations of merely a per se violation plus resultant damages has been held sufficient to state a cause of action under § 4 by the Supreme Court in *Radiant Burners, Inc. v. Peoples Gas Lgt. & Coke Co.,* 1961, 364 U.S. 656, 660, 81 S.Ct. 365, 367, 5 L.Ed.2d 358. *See also McBeath v. Inter-American Citizens For Decency Committee, supra* at 361.

**11.** The Seventh Circuit explained the term "business interest" as follows:

"The language of the statute is general and all inclusive. It includes any person who shall be injured in his business or property. We assume that the word business was used in its ordinary sense and with its usual connotations. It signifies ordinarily that which habitually busies, or engages, time, attention or labor, as a principal serious concern or interest. In a somewhat more truly economic, legal and industrial sense, it includes that which occupies the time, attention, and labor of men for the purpose of livelihood or profit, —persistent human efforts which have for their end pecuniary reward. It denotes "the employment or occupation in which a person is engaged to procure a living." *Allen v. Commonwealth,* 188 Mass. 59, 74 N.E. 287, 288, 69 L.R.A. 599.

sion salesmen who had established their own clientele which gave them a more clearly defined claim to income generated from these sources. But this is a distinction without a difference, for just as the commission salesmen in *Nichols* and *Roseland*, plaintiff in this case was deprived of the income earning potential of his stock in trade, that is, his demonstrated capacity for immediate entry into this business, as witness his employment by two distinguished firms and the passing of the exacting qualifying examinations.

We prefer the reasoning of the Seventh Circuit in *Nichols* where the Court expressly defined the loss of the opportunity to perform work as an injury contemplated by the "injury to business" language of § 4:

> Addressing the second contention first, we readily conclude that one who has been damaged by loss of employment as a result of a violation of the antitrust laws is "injured in his business or property" and thus entitled to recovery under 15 U.S.C.A. § 15. Work as the employee of another is not, indeed, an independent business enterprise, and an opportunity to perform such work may not be property in the ordinary sense, but the interest invaded by a wrongful act resulting in loss of employment is so closely akin to the interest invaded by impairment of one's business as to be indistinguishable in this context. (Footnotes omitted).

Finally, *Martin v. Phillips Petroleum Co.*, 5 Cir., 1966, 365 F.2d 629, 633, *cert. denied*, 385 U.S. 991, 87 S.Ct. 600, 17 L.Ed.2d 451, does not stand in the way. This case concerned an appeal from an order granting Summary Judgment in favor of the defendant and both the trial court and the Court of Appeals concluded that there existed no genuine controversy as to any material facts. In contrast, the facts of this case

have not yet been developed and the allegations of the pleadings presage several material factual disputes.

Moreover, the allegations of the plaintiff in this case meet the requirements for injury to business under § 4 of the Clayton Act as established by this Court in *Martin.* There we held that § 4 of the Clayton Act required both an intention to enter the business and a showing of preparedness to do so. *Id.* at 633, *citing North Texas Producers Association v. Young*, 5 Cir., 1962, 308 F.2d 235, *cert. denied*, 372 U.S. 929, 83 S.Ct. 874, 9 L.Ed.2d 733. Clearly, the conduct of the plaintiff in accepting employment with Merrill Lynch and subsequently Shearson demonstrated not only an intent but the fact that the plaintiff satisfactorily completed the examinations necessary to become a registered representative.

### Not Over Yet But It Soon May Be

We hold that in this instance the Court should have grappled with these antitrust claims on a factual record. *See Public Affairs Associates, Inc. v. Rickover*, 1962, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604. But we point out that "indeed, once the matter gets beyond what the lawyers in legalese say the facts are and the Court sees what the real facts are, it may well wash out on summary judgment, *Bruce Construction Corp. v. United States*, 5 Cir., 1957, 242 F.2d 873, or if not then, then later on motion for directed verdict after the plaintiff's [case] or all of the evidence is in." [12] *Cook & Nichol, Inc. v. The Plimsoll Club, supra*, at 511. In view of the pertinent cases discussed, we are simply unable to hold at this early stage that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. We thus end, as we began, that *Conley* is the test, [13] but

---

12. Indeed, commentators point out that Sherman Act claims have had a rather high mortality rate of late in the Fifth Circuit after a trial on the merits—"of over a dozen opinions handed down by the Fifth Circuit during its October 1974 term that involved an alleged restraint of trade in violation of section 1 of the Sherman Act, only one affirmed a district court judgment awarding damages." (Footnotes omit-

ted). Reasoner and Carter, *Antitrust Developments in the Fifth Circuit, supra* at 808.

13. Whatever vitality the 1955 and 1952 decisions *Crummer Co. v. DuPont*, 5 Cir., 1955, 223 F.2d 238, *cert. denied*, 350 U.S. 848, 76 S.Ct. 85, 100 L.Ed. 755; and *Nelson Radio & Supply Co. v. Motorola*, 5 Cir., 1952, 200 F.2d 911, *cert.*

with the constant caveat that we have not predicted what the plaintiff can prove or what, if anything, he may obtain or recover. That is for another day.

REVERSED and REMANDED.

*denied*, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356, have in the supervening light of *Conley*, the allegations of the complaint meet this standard for purposes of F.R.Civ.P. 12(b)(6).